A capias may issue for any cause of action whatever against a freeholder, who neglects to put in special bail upon notice. *ex. gr.* for *slander.*

JACK *against* SHOEMAKER.

IN this case, the plaintiff's attorney gave notice to the defendant to enter special bail on or before a certain day, in the office of the prothonotary of this court, and upon his neglecting to do it, issued a *capias ad respondendum.* The notice and the writ were in *case*, without designating the particular cause of action; but from a written communication by the plaintiff's attorney to the defendant, it appeared to be *slander.* Upon affidavit of these facts, and of his owning a freehold to a greater amount than the bail required, the defendant obtained a rule to shew cause why the capias should not be quashed with costs, upon the ground that he was a freeholder; and now upon the return of the rule,

*C. J. Ingersoll* for the plaintiff argued, that by the act of 20th *March* 1724-5, 1 *St. Laws* 223., and the invariable practice under it for half a century, the defendant, notwithstanding his freehold, was liable to arrest for neglecting to enter special bail. The first section of that act directs that no person, having a certain freehold, shall be liable to arrest in any civil suit, except in the king's case, or where a fine is due to the king, or " *unless they be such freeholders as by this act are made liable to be arrested;*" and the second section describes the kind of freeholder thus liable, as a defendant who " has signified his intention of going to sea, or of removing " out of this province, or lurks in secret places, or conceals " himself in his own or other's house, or has refused or ne-

1810.

JACK
v.
SHOEMAKER.

" glected upon demand to give either real or personal secu-
" rity for the debt, *or refused without process to appear and*
"*put in special bail* to the plaintiff's action for the debt *or*
" *cause for which he complains* &c." It is of no moment what
the cause is for which the plaintiff complains; the expression
embraces all causes, and so has been the practice. It may as
well be for slander, as any thing else; because it never has
been the practice in this state to obtain a judge's order to
hold to bail previous to issuing the writ, in those cases
where bail is not of course; and there being no difference
between slander and other causes of action as to the manner
of instituting them against others, there is no reason for any
difference in instituting them against freeholders. If the free-
holder is not liable to bail, he can cite the plaintiff to shew
his cause of action. All the plaintiff wants in this case is the
defendant's appearance; he will waive the bail.

The Court being desirous to ascertain what the practice
had been under this act, appealed to the gentlemen of
the bar, the experience of one of whom, Mr. *Edward
Tilghman*, went back to 1767. They concurred in sta-
ting, that the practice had not been to obtain a judge's
order to hold to bail in those cases where bail was not
of course, but the right to bail was discussed after the
arrest, upon a citation or rule to shew the cause of ac-
tion. That notice had been given to freeholders to enter
special bail, and upon neglect, a capias had issued, in
all cases indiscriminately. Some of the bar recollected
cases of slander, where precisely the same course had
been taken as in the present instance, without question.

*Sergeant* for the defendant said that a practice however
uniform, which had passed *sub silentio*, could not prevail
against an act of assembly. The object of the act in ques-
tion was no doubt to confer a privilege on freeholders, in
consequence of the presumed stability of their estate, and
the security of their creditors; but the plaintiff's construction
reduces it to a very idle ceremony, a written notice of a day
or two preceding the capias. It in fact places the freeholder
in a worse situation than other defendants; for if he complies

1810.

JACK
v.
SHOEMAKER.

with the notice, and enters special bail, he cannot undo it afterwards; and he may thus be compelled to give bail, where it is not dem ndable, and where a common defendant could not. The intention of the act was to confine this notice to enter special bail, to cases of debt and contract exclusively. All the provisions of the second section have regard to the case of an embarrassed freeholder, who is unable or unwilling to meet his engagements. Removal from the state, concealment, refusal to give security for the debt, suffering judgments to be entered against him, assigning over his estate, not having an estate clear from incumbrances sufficient to pay the debt demanded, all these limit the signification of the terms *cause of action* to the case of debt or duty or contract for the performance of a duty; to cases in which the plaintiff has a right to ask special bail, and where the defendant may be supposed to do wrong in refusing it, and therefore justly to forfeit a privilege. It seems a most extraordinary provision, to take away a privilege in consequence of the party's refusing to do that, which according to the regular and correct practice of the law, he is not obliged to do.

TILGHMAN C. J. The defendant has obtained a rule to shew cause why the plaintiff's writ should not be quashed, with costs, because he, the defendant, being a freeholder, was privileged from arrest. The question arises on the act of 20th *March* 1724-5. The plaintiff has shewn, that previous to the issuing the writ of capias, he gave written notice to the defendant, to enter special bail, in an action *on the case*, which was not done.

If we were now called upon for the first time to construe this act of assembly, I think it ought to receive a strict construction. Though well adapted to the industrious and economical habit of the times, when it was made, it is not so suitable to the manners of the present day. In the infancy of the country, there was a stability in property, which afforded a presumption, that he who was a freeholder at the beginning of a suit, would continue so to the end of it. But not so now, when from the vast increase of luxury, the risks of commerce, and the unrestrained spirit of speculation, we see freehold estates pass in rapid circulation from owner to owner.

The first section of the act directs, that freeholders shall not be arrested by writ of capias in civil suits, " unless " they be such freeholders as by this act are made liable to " be arrested." The second section contains a proviso pointing out various cases in which freeholders shall be liable to arrest, one of which is, " where the defendant hath upon de- " mand, neglected or refused without process to appear, " and put in special bail to the plaintiff's action, for the " *debt, or cause for which he complains.*" The latter part of this section declares, that in all the preceding cases, *writs of arrest shall be granted*, and the defendant held to special bail, if the case requires it. The plaintiff has brought his case within the words of the act. The defendant has neglected to enter special bail, on demand, to the plaintiff's action, for the cause for which he complains. It is argued for the defendant, that the intention of the act was confined to cases of *debt* or *contract*. I cannot think so; because there are many cases besides debt or contract, where special bail ought to be given. But then, says the defendant, under this construction, freeholders are in a worse situation than other persons, because they may be compelled, at the risk of losing their privilege, to enter special bail in cases where it is not lawfully demandable; as in the present instance, where the cause of action is understood to be slander. This is not the case. For when a freeholder receives notice to enter bail, he may cite the plaintiff to shew his cause of bail, and if the judge is of opinion, that the defendant ought not to be held to bail, he may order that his appearance be accepted; or perhaps he may forbid the issuing of a capias, although as to that I give no opinion. Now it seems to be a sufficient protection to freeholders, that in no case can they be arrested without notice, and without failing to do something which they ought to do. If the action requires special bail, they may put in bail, and thus prevent the issuing of the capias; and if it does not require bail, they may by resorting to a judge, procure an order, which will render the arrest merely a form, without real injury or inconvenience.

I have said that the case has been brought within the words of the act, which if now to be first construed, ought to receive a strict construction. But it appears to have long

1810.

JACK
*v.*
SHOEMAKER.

1810.

JACK
v
SHOEMAKER.

ago received the construction contended for by the plaintiff, not indeed by any decision of this court, but by uniform unopposed practice.

The oldest gentlemen of the bar declare, that writs of capias have issued in all cases without exception, against freeholders, who neglected to enter special bail after demand.

We have received positive evidence of this practice as far back as the year 1767, and there is no tradition of any thing to the contrary. I will not say, that even long practice *sub silentio*, should prevail against the clear meaning of an act of assembly. But if the meaning of the act should appear doubtful, I should be decided by the practice. I think the most that can be said in this case, is, that the act is not quite clear. I have therefore no hesitation in construing it according to the practice. Whether the defendant should be held to bail is another question. I understand however, that it will be unnecessary to enter into it, as the plaintiff's attorney asks only an appearance without bail.

I am of opinion that the rule should be discharged.

YEATES J. The question in this case is, can an action of slander be originated against a *freeholder*, by a notice served upon him to enter special bail in the prothonotary's office within a given period; and on his neglecting or refusing so to do, can a capias legally issue against him?

By the act " to regulate the practice upon writs of sum-" mons and arrest" passed 20th *March* 1724-5, 1 *Dall. St. Laws* 223., the proceedings against freeholders are directed to be in a certain specified form by summons; and they are not to be arrested and held to special bail, unless in particular enumerated cases. Amongst these, it appears by the 2d section, that a capias may issue against a freeholder, " where " he has refused or neglected upon demand to give either " real or personal security for the *debt;* or refused, without " process, to appear and put in special bail to the plaintiff's " action for the *debt or cause* for which he complains." *Cause of action* are most general and comprehensive words, and certainly include in their legal signification suits for slander.

But it has been objected, that the intention of the legislature was, to give this mode of procedure only in cases of debt or contract, or where the cause of action was of a bailable nature; and that a different construction of the law would subject freeholders to many hardships and inconveniences. To this it is answered, that there is no ambiguity in the expressions made use of; but if they were really dubious, the sense affixed to them for many years, would be a good rule to go by in their exposition. *Vaugh.* 169. Bail is not demandable of course, in actions of slander. In *England*, the practice is to obtain a judge's order in such cases, founded on affidavits stating special damage, or peculiarly aggravated circumstances, &c. But no such practice has obtained in the courts of justice of this state. If a defendant is held to bail in an action, wherein no bail is required by law, he obtains redress by citing the plaintiff to appear before a judge of the court in vacation, or the court when sitting, to shew his cause of action, who make the proper orders therein on a hearing.

The same remedy is open to the party, on whom notice is served to enter special bail without just grounds; and I can see no hardship or inconvenience in the latter case, which may not occur in the former. Where a party is maliciously held to bail, the policy of the law gives him another mode of redress, by his action for damages.

I cannot consider the practice which has subsisted in this state, either as bad in itself, injurious in its operation, or as militating against the law which has been cited. Abundant proof has been given of it, by the different gentlemen, who have been called upon during the argument. It is most probably coeval with the act itself. It was in full operation in 1761 within my own knowledge. The maxim that " *contemporanea expositio est fortissima in lege*," has always prevailed. 2 *Inst.* 11, 136. And so far has this principle been extended, that in *Stuart* v. *Laird*, 1 *Cran.* 299., in the Supreme Court of the *United States*, *Patterson*, justice, in delivering the opinion of the court, expresses himself thus: " Practice, and " acquiescence under it for a period of several years, com- " mencing with the organization of the judicial system, fixes

" the construction of the constitution of the *United States.*
" It is a contemporary interpretation of the most forcible
" nature. This practical exposition is too strong and obsti-
" nate to be shaken or controlled. Of course the question
" is at rest, and ought not now to be disturbed."

I am therefore of opinion, that the rule to shew cause
why the proceedings in the present case *should not* be quash-
ed, be discharged.

BRACKENRIDGE J. The construction put upon the act of
assembly by the practice which would seem to have prevail-
ed in this and some other districts, will warrant what has
been done in the present case, though it is not the construc-
tion that I had put upon it in my practice; and it would seem
to me to reduce the freeholder's privilege intended by the act
to very little, if in any case, he is liable to an arrest, where
on *demand made, he refuses to appear, and put in special bail.*
I had applied this to the preceding excepted cases of having
signified an intention to remove, or of being incumbered &c.,
and had thought that the *or* was to be construed, *and* if in such
cases he refused to appear and put in special bail. But I will
admit that the act is ambiguous, and that it is difficult to as-
certain the meaning beyond a doubt; and it would seem to
require the explanation of the legislature, by a declaratory
act on this head. Were it a new case, independent of con-
struction put upon it by usage, I should think myself justifi-
able in giving the construction that I take to be most in fa-
vour of the freeholder. It is an inconvenience, when no
intention has been manifested of evading payment by re-
moving, when no incumbrance lies upon the estate, and no
danger of losing the debt appears, to be nevertheless liable to
be called upon, not *only to appear, but to put in special bail,*
or to submit to an arrest. For though the capias may be in-
dorsed, " *the defendant's appearance accepted,*" yet this sup-
poses a previous arrest, and the laying on of the hands of the
officer; and he could not return " cepi corpus" and the
defendant's appearance accepted, without it. On the con-
struction however, which seems to have been put upon this
act for such a length of time, of which evidence has been
given, I cannot undertake to say that the process which has

issued with an indorsement of appearance accepted, is illegal, and that we can quash the writ with costs, as in the case of process unquestionably illegal, and without ground to support it.

Rule discharged.