[PHILADELPHIA, APRIL 16, 1835.]

JONES and others *against* ORUM.

5 R    249
213    ²619
29 SC  ²417
29 SC  ²418

#### CASE STATED.

The plaintiff proceeded originally by *capias* indorsed, "no bail required." It was not served according to the rule of court, the defendants not having subscribed a note in writing empowering the prothonotary to enter their appearance. The sheriff returned "*cepi corpus*, and defendants discharged on common bail."

*Held*, that the return was nugatory and did not authorise an appearance to be entered.

Plaintiff entered a rule of reference upwards of ten years after the writ issued, and returned without being duly served, and no step taken by him during that period to continue the action, and obtained an award against all the defendants.

*Held*, that the rule was irregular, and that the irregularity was not waived by a general appearance by an attorney, entered after the rule of reference, but before the appointment of arbitrators; the appearance having been amended by the court below, so as to stand for one of the defendants only.

ERROR to the Common Pleas of Chester County.

The defendant in error who was plaintiff below, issued a capias against the plaintiffs in error, who were defendants below, on the 21st of January, 1820, and caused it to be endorsed " no bail required."

The rule of the Court of Common Pleas governing the practice in such cases, is in these words:

II. " When attorneys issue writs of capias against defendants, from whom they do not require bail, they shall mark their process with the words "no bail required," which the prothonotary shall indorse on the writ; in which case the sheriff or his officer, shall serve the defendant with a copy of the writ, as in case of a summons : and the defendant on such service, and in all cases where common bail is ordered by a Judge, shall subscribe a note with these or the like words: ' I hereby empower the prothonotary to enter my appearance to this action;' which subscription shall be tested by the officer who executes the writ."

No such note as was required by the foregoing rule was subscribed, or tested in this case. But the sheriff returned "*cepi corpus*, and discharged on common bail."

No appearance was entered by attorney, or otherwise; and the cause slept in this state upon the docket, more than ten years, without any movement being made in it.

On the 8th of March 1830, a declaration was filed, and rule to plead in six weeks entered; and on the 4th of May, 1830, judgment signed for want of a plea.

Upon this judgment a writ of inquiry issued.

On the 14th of Sept., 1830, a rule was obtained to show cause

(Jones and others *v.* Orum.)

why the judgment and rule to plead, should not be stricken off the docket, which after argument was made absolute, and the judgment and rule struck off.

And now, June 13th, 1831, on motion of *B. Tilghman*, and on reading the paper signed by *Spicer Jones*, dated the 23d May, 1831. the said paper was ordered to be filed, and leave was given to correct the general appearance heretofore entered for the defendants, by adding upon the record that *B. Tilghman*, appeared for *Spicer Jones* only, and not for the other defendants.

June 14th, 1831, on motion of Mr. *Dillingham*, ordered that the prothonotary amend the appearance of Mr. *Tilghman*, directed by him in this case, by adding to his name on the margin of the record, the date at which Mr. *Tilghman* directed his appearance for the defendants to be entered.

April 30, 1831, arbitrators were appointed under the above rule by plaintiffs' attorney, and prothonotary, in the absence of defendants, upon due proof of service of the rule of reference; to meet May 23d, 1831.

May 2d, 1831, a motion was entered for a rule to show cause, why the rule of reference and proceedings under it should not be struck off.

May 13, 1831, *Tilghman* had leave to file his warrant of attorney.

The arbitrators, nevertheless, proceeded to make an award, of which the following is a copy.

"May 23d, 1831, two of the arbitrators within-named, viz., *Henry Fleming*, and *David Townsend*, appeared at the time and place appointed. *Jesse Conard*, Esq. counsel for the plaintiff, appeared, and exhibited proof of the service of the rule of reference, upon two of the defendants, viz., *Samuel Brooke*, and *Thomas Jones*, who did not attend. *Benjamin Tilghman*, Esq., appeared as attorney and counsel of *Spicer Jones*, one of defendants, but disclaimed any authority to appear for, or act on behalf of the other defendants. The arbitrators present, then appointed and chose *John Graves*, an arbitrator in the room of *Thomas Williamson*, the other arbitrator, who did not attend; and the said *John Graves*, being notified of said appointment, attended: and the arbitrators being all duly qualified, proceeded to hear the plaintiff, with his vouchers and evidence; and also the allegations of the counsel for *Spicer Jones*, one of said defendants, and upon due examination and consideration of the evidence adduced to us, do find that there is three thousand one hundred and ninety-three dollars and seventy-eight cents, due from the defendants to the plaintiffs."

This award was duly filed, and the proceedings being under the act of 1810, was docketed as a judgment.

June 22d, 1831, after argument, the motion for a rule, &c. to

(Jones and others, *v.* Orum.)

strike off the rule of reference, and the proceedings under it, was denied.

Whereupon this writ of error was sued out, and the following specifications filed.

1st. The declaration was filed when there was no defendant in court.

2d. The declaration was filed when the plaintiff himself, by his own laches was out of court.

3d. The rule of reference was entered without there being any suit actually pending, or any action regularly entered, or declaration regularly filed.

4th. The proceedings of the arbitrators are irregular upon their face.

5th. Judgment has been entered against two defendants, never in court.

6th. The court below erred in refusing to strike off the rule of reference, and proceedings under it.

The plaintiff in error assigned the general errors.

The following opinion was delivered in the court below, by Judge DARLINGTON, on a motion to strike off the judgment and rule to plead.

The plaintiff issued a *capias* against defendants, returnable to January term, 1820, and caused it to be indorsed with the words " no bail required," according to the eleventh then existing rule of this court, which directed in such cases, that " the sheriff should serve the defendant with a copy of the writ, as in case of a summons, and the defendant on such service and in all cases, where common bail is ordered by a judge, shall subscribe a note with these, or the like words: " I hereby empower the prothonotary to enter my appearance to this action," which subscription shall be attested by the officer who serves the writ; the sheriff may then return " *cepi corpus,* and the defendant's appearance accepted," or " *cepi corpus,* and defendant discharged on common bail;" then the defendant may be as effectually in court as if he were in custody, or had perfected special bail. The prothonotary may enter his appearance; a declaration may be filed; and he may be ruled to plead, or he may rule the plaintiff to declare; but before the defendant is actually in court, or has authorised his appearance, then in suits commenced by *capias,* he cannot be called on to plead, nor can any judgment be entered for want of a plea.

. In cases of summons, according to long established practice, it is true, a judgment by default may be entered, but this is a departure from the terms of the Act of Assembly of 20th March, 1724, which provides that if the defendant does not appear, but makes default, the plaintiff may file a common appearance for him, and proceed to judgment by *nihil dicit.* The act authorises the plaintiff to enter the appearance, and the practice sanctions the judgment if he omits

(Jones and others *v.* Orum.)

it. *Morrison* v. *Wetherill*, 8 *Serg. & Rawle*, 502. But in the case of this *capias*, the defendant has not authorized his appearance to be entered. No act of assembly authorises the plaintiff to do it, nor can he do it at his pleasure; inasmuch as the defendants have given no bail to the sheriff, nor are they in custody.

The sheriff in this case, instead of causing the defendants to subscribe the note, prescribed by the rule of court, or in default thereof taking the body, simply returned "*cepi corpus* and defendants discharged on common bail."

In our opinion, this did not authorize the plaintiff or the prothonotary to enter the defendants' appearance, or to consider them in court, without their consent. And therefore, the rule to plead entered ten years thereafter, on the 9th of March, 1830, and the judgment entered thereon, on the 4th May, 1830, are irregular.

Rule to show cause made absolute.

*Dillingham* for the plaintiffs in error.

The process never having been served according to the rules of Court, the defendant was not amenable to it. After the return day, the suit itself was at an end. Besides, if the process had been regularly served, a delay of ten years to move in it, is such *laches*, as the Court cannot tolerate. He cited and commented on *Hertzog* v. *Ellis*, 3 *Binn.* 209. *Moulson* v. *Rees*, 6 *Id.* 32. *Brown* v. *Scheaffer*, 6 *Id.* 177. *Paul* v. *Purcell*, 2 *Browne*, 20. *Thomas* v. *Hopkins*, *Id.* 145. *Clemson* v. *Beaumont*, *Id.* 215. *Maus* v. *Sitesinger*, 2 *Serg. & Rawle*, 421. *Phillips* v. *Oliver*, 5 *Id.* 419. *Sharp* v. *Kilgore*, 3 *Id.* 387. *Flanegan* v. *Negley*, *Id.* 498. These decisions were under the law as it stood before the act of 1820, and established that a rule of reference might be entered before the return of the writ, or bail entered, or declaration filed. But could the plaintiff arbitrate after he had discontinued? or put the case of summons and *nihil?* Here the plaintiffs virtually discontinued. He was out of Court by his own *laches*, in not declaring for a year. This is the English rule. *Sell. Prac.* 221. He further cited, *Vitry* v. *Dauci*, 3 *Rawle*, 1. *Brown* v. *Kelso*, 2 *Penn. Rep.* 427.

*Conard* and *Kittera*, for the defendant in error.

The mode of serving the capias pointed out in the rule of court, does not exclude such other as the plaintiff may direct. Here the order indorsed on the writ, is defendant's appearance accepted. The plaintiff may have given special orders, or the defendant may have signed a paper, authorizing his appearance to be entered, which has been lost.

2. Mr. *Tilghman's* appearance was good for all the defendants. There cannot be a special appearance, for one in suit against partners. *Taylor* v. *Coryell*, 12 *Serg. & Rawle*, 250. His declaration of his want of authority is no evidence of the fact.

(Jones and others *v.* Orum.)

3. The legislature have not altered the law in any respect, except that a plaintiff cannot arbitrate before return day, or without a declation. Suppose defendant arbitrates before return day, and afterwards a *nihil* is returned, it is good. If there was no appearance, still there was an action brought, and a rule of reference might be entered. They further cited, *Phelps* v. *Johnson*, 4 *Cow.* 61. *Salmon* v. *Davis*, 4 *Binn.* 375.

The plaintiffs by their motions, considered the case in court, and therefore cannot complain of lapse of time.

*Chauncey* in reply, argued the matter, as it stood first, on the entry of the rule of reference, and secondly, on the appearance of Mr. *Tilghman.* He contended that it never had been decided, that a rule of reference could be entered after process returned not served; that here was a lapse of ten years, without continuances, or even declaration. If this could be tolerated the limitation law would be virtually abolished. How did Mr. *Tilghman's* appearance alter the state of things. It was amended by order of the court, and the effect of that order, was to destroy all he had done as attorney for any except *S. Jones*, and he appeared for him only. He cited, 2 *M'Cord*, 311, to show that before trial, the court will never refuse leave to amend, when the attorney shows he had no authority. A partner after dissolution, cannot appear for the others without express authority. This principle seems settled by the analogous decisions of this court, on the statute of limitations. *Levy* v. *Hipple*, 17 *Serg. & Rawle*, 126.

The opinion of the court was delivered by

SERGEANT J.—Several errors in the proceedings below have been assigned in this court, which result in the question, whether the award against all the defendants was valid. The plaintiff proceeded originally by *capias ad respondendum* indorsed " *no bail required*," but it was not served according to the rule of court, the defendants not having subscribed a note in writing, empowering the prothonotary to enter their appearance, and therefore the return of the sheriff of " *cepi corpus*, and the defendants discharged on common bail," was nugatory, and did not authorize an appearance to be entered. The court below so decided, when they ordered the rule to plead and judgment to be struck off, and we think rightly. The sheriff was bound either to take such a note in writing, as would justify an appearance to be entered, or to hold the defendants to special bail. *Barnard* v. *Field*, 1 *Dall.* 348. 3 *Binn.* 286. It is suggested that such a note may have been signed, and afterwards lost. If this were so, the fact might have been shown to the court below, on the hearing, and if satisfactorily established, would no doubt have produced a different result.

After this order of the court below, the plaintiffs entered a rule of

(Jones and others *v.* Orum.)

reference under the arbitration act, and caused notices to be served on the defendants, and it is insisted now, on the authority of *Flane-gan* v. *Negley,* and similar cases, that a suit having been once enter-ed on the docket, the rule of reference was regular, though upwards of ten years had elapsed after the writ was first taken out, and returned without being duly served, and not a single step had been taken by the plaintiffs during that period, to continue the action. If this were so, it would certainly present an extraordinary state of things in the management of suits. A writ might be taken out, and never served, and the plaintiff lie by nearly double the period imposed by the statute of limitations, and then the plaintiff treat the action as pending, and date its existence from the first writ. This would introduce all the mischiefs the statute of limitations was intended to guard against, and expose a party to the necessity of contesting the validity of a claim, after more than six years had elapsed, and when his vouchers were lost and witnesses dead. Even where the replication of a writ taken out and continuances since, is allowed to avoid the plea of the statute of limitations, no case has gone to the extent of time, which had passed in this case. In *Schlosser* v. *Lesher,* 1 *Dall.* 415, the Court of Common Pleas, Ship-pen, president, considered a period of two years and a half from the original summons not too long, and a case is there referred to in 1 *Sid.* 53, where Twisden, Justice, says he had known a suit continued by *latitat* for five years before the bill filed, and *Herne,* secondary, said a *latitat* may be continued seven years. If even the latter time were adopted and the continuances here are a matter of form, it is still far short of the interval passed over. If, therefore, the case be considered with a view to the principles applicable to the statute of limitations, and the doctrine of entering continuances, upwards of ten years is too long a period, and the action must be considered as discontinued.

But though some analogy exists to cases under the statute of limita-tions, there are material differences between the common law princi-ples applicable to that statute, and those which regulate the right of arbitration, under the act of 1810, and its amendment of the 28th *March,* 1820, and this case depends on the true construction of these acts, rather than on corresponding principles in other matters, exist-ing at the common law.

The arbitration act of 20th *March,* 1810, had not been long in use, before some of its features were found in practice, to present much inconvenience and incongruity. In the cases of *Hertzog* v. *Ellis,* 3 *Binn.* 209. *Flanegan* v. *Negley,* 3 *Serg. & Rawle,* 498. *Sharp* v. *Kilgore,* 3 *Serg. & Rawle,* 387. *Brown* v. *Scheaffer,* cited *ib.,* the court, under the authority in the first section, to arbitrate " at any time after the entry of the suit," felt themselves compelled to decide, that a rule of reference might be taken out before the return day of the writ, whether a *capias* or summons, even though

(Jones and others *v.* Orum.)

the writ were never served; so that there might be judgment and execution before the return day of the original process, and legal proceedings were carried on against a defendant, in a suit in which he never was served with a writ, and was not, and might never be regularly bound to appear in court. So also, the act not having required the plaintiff to file a declaration or statement, it was held that it was not necessary; in consequence of which it was often difficult to discover after the award, in what cause of action it had been made, and in *Bazire* v. *Barry,* 3 *Serg. & Rawle,* 461, this court, on a question of costs, was obliged to resort to parol evidence, to ascertain the amount of the plaintiff's claim before the arbitrators. These inconveniences induced this court, in *Bazire* v. *Barry,* in *Flanegan* v. *Negley* and other cases, about the same period, to point out in forcible language, the necessity of some legislative amendment; and on the 28th *March,* 1820, an act was passed, which seems to have been intended to effect the desired object. It declares that, " no rule of arbitration shall be entered or taken out, until after the first day of the term, after the suit or action may have been commenced, nor until after a declaration or statement of the cause of action shall have been filed." Now, by the first day of the term, the plaintiff may compel a return of his process, and ascertain definitively, whether it has been served or not; and if the process has not been served, and the defendant is not in court, nor is bound to be, it seems to me, the legislature intended the plaintiff should not be permitted to arbitrate; otherwise the act of 1820, goes but a little way to correct the mischiefs formerly existing, under the act of 1810, so much complained of. All the decisions relied on were prior to the act of 1820; none have occurred since, to sanction the former practice, nor could they, I apprehend, without marring in a great measure the principal design of the act of 1820, which was to restore the symmetry of the law, by requiring a permanent declaration in writing of the plaintiff's cause of action, before it went to a tribunal to be decided, and a service of the process, before the defendant could be considered as liable to legal proceedings in the suit, commenced by that process, and deriving its legal existence from it. At all events, I have no doubt, that if a plaintiff suffered ten years or more to elapse after a writ returned without being served, and without taking any step in the cause, the suit must be considered as discontinued; and when a suit is discontinued, the plaintiff cannot enter a rule of reference.

It is further contended by the plaintiff below, that if there were an irregularity in the proceedings, it was waived by the general appearance entered by Mr. *Tilghman* for all the defendants, on the *9th of April,* 1831, after the rule of reference was entered, but before the appointment of arbitrators. And if this appearance had so remained uncorrected, though at the instance of one defendant only, and under circumstances of considerable suspicion, as to the motive

(Jones and others *v.* Orum.)

of that defendant, in instructing Mr. *Tilghman* so to act, it might perhaps have the effect contended for, without meaning however to express any opinion as to the power of one partner to authorize an appearance for another, either before or after dissolution, upon which some arguments and authorities have been adduced. But this appearance, though general in the first instance, was amended by the court below, and stands now on the record before us, under that amendment as a special appearance for *S. Jones* only, as of the date of the original appearance. This the court below, in their legal discretion, had power to do, and we must take it as it stands in the record, presuming they had good reasons for what they did. *Kennedy* v. *Wachsmuth*, 12 *Serg. & Rawle*, 171. It is however sufficiently evident, that if the plaintiff was, for a short period, justified in considering Mr. *Tilghman* as appearing for all the defendants, measures were speedily taken to apprise him of the mistake. Two days after the appointment of arbitrators by the plaintiff's attorney and the prothonotary, a motion was made to strike off the rule of arbitration; before the arbitrators, Mr. *Tilghman* appeared as attorney for *S. Jones* only; and the plaintiff seems to have proceeded in the arbitration on the strength of his service of the rule, not on the general appearance of Mr. *Tilghman,* which he *was then* aware was withdrawn. If an attorney has erroneously appeared for a party, I know no reason why the mistake may not be corrected, provided it be done in due time, before any step taken in pursuance of it, and without occasioning loss or prejudice to the other party. See *Haslett* v. *Street*, 2 *M'Cord*, 311. I do not perceive in this case, that the plaintiff in his proceedings relied on this general appearance, or that it was not corrected in proper season. I am, therefore, of opinion, that the award was improperly made against all the defendants, and that the judgment thereon be reversed.

Judgment reversed.