## Fehr *versus* Reich.

Under the Act of 16th June 1836, a rule of reference may be entered before the return day of the original writ; but the summons must be served on the defendant before, or contemporaneously with the service of the rule of reference.

Where, however, a rule of reference was entered and served on the defendant four days before the service of the summons, and the time fixed for choosing arbitrators was sixteen days after the service of the process, but the defendant did not appear, and took no steps in the cause, until after an award had been made and execution issued thereon, it was *held*, that the irregularity was waived by the delay.

ERROR to the Common Pleas of *Berks county*.

This was an action of *assumpsit* by Henry Reich against John Fehr. The summons was issued on the 18th May 1859, and on the same day, the plaintiff filed a declaration, and entered a rule of reference, the time for choosing arbitrators being fixed on the 4th June.

The rule of reference was served on the defendant, on the 19th May; but the summons was not served by the sheriff until the 23d. On the 4th June, arbitrators were chosen, in the absence of the defendant; and on the same day, notice of the meeting of the arbitrators on the 23d was served upon him. On the 23d, the arbitrators met, and made an award in favour of the plaintiff, for $197.70; which was filed the same day, and judgment entered thereon. The defendant did not appear before the arbitrators.

On the 14th July 1859, a writ of *fieri facias* was issued; and on the same day, the defendant applied for and obtained a rule on the plaintiff to show cause why the judgment should not be vacated, and the award and execution set aside. The court below (JONES, P. J.) subsequently discharged the rule, and delivered the following opinion:—

" The 8th section of the arbitration law of 1836 permits either party in any civil suit to enter a rule of reference for the trial of all matters in variance in the suit between the parties. And the only limitation of time at which this can be done, is that contained in the 9th section, where the plaintiff is forbidden to enter such rule until after declaration filed by him.

" A civil suit does not merely begin to have a legal *status* from the service of the writ upon the defendant. It is a suit from the moment of its entry; certainly from the moment of the *exitus* of the writ into the hands of the sheriff. The Act of 1810 spoke of ' the entry of the suit' as the point of time, after which either party might arbitrate; and the Act of 1836 does not essentially

[Fehr v. Reich.]

alter that. After the writ is sued out, there is a civil suit in existence, with one party in court, and the other summoned or to be summoned to appear there. The party who sues out the writ and files his declaration, is in a condition to arbitrate, before the writ is served. He cannot compel the sheriff to serve the writ forthwith, though the promptest recourse to arbitration may be of vital importance to him. It is enough for the sheriff, if he serves the writ ten days before its return day. Must a plaintiff lie idle during a long vacation, for months, until it suits the sheriff to serve the writ? We think not. Having done all he could do, in suing out his writ and filing his *narr.*, and being a party in a civil suit, he may proceed to arbitrate.

"The service of the rule to arbitrate may be the first notice of the pendency of the action to the defendant; but it is notice, and is not to be despised, because the writ has not yet been served. Why should not the defendant appear and take part in the choice of arbitrators, under a proviso as to any error in the writ or in the service of the writ, saving to himself all advantages accruing therefrom? If the writ should not be served at all, or not be served according to law, all the proceedings would fall to the ground; so if it should be quashed. The defendant could lose nothing. He would have all the advantage to be derived from such irregularities or defects of procedure. If there is no defect in the service, or in the writ, he is not damnified, because for him there has been an action or suit pending from the very impetration of the writ—all of whose subsequent steps to bring him into court have been regularly and fitly taken, and have relation back to the suing out of the original.

"But here the writ was served four days after the service of the rule, and many days before the time designated in the rule for choosing the arbitrators. Before that day, the defendant had the amplest proof that there was a suit in which he was a party in court; and it was his misfortune, if he did not conceive he was called upon to take notice of the proceedings which were going forward. We cannot help him. The rule to show cause why the *fi. fa.* should not be set aside is discharged, and the plaintiff is at liberty to proceed with his execution."

The defendant, thereupon, sued out this writ, and here assigned for error, that the court erred in refusing to vacate the judgment, and set aside the award and execution.

*E. L. Smith, Sallade,* and *S. L. Young,* for the plaintiff in error.

*C. O. Wagner,* for the defendant in error, cited and relied on the case of Henness v. Meyer, 4 *Whart.* 358.

The opinion of the court was delivered by

WOODWARD, J.—Our first compulsory arbitration law of 1810, authorized either party in any civil suit to take a rule of reference at any time after the *entry* of such suit. A suit was held to be entered within the meaning of this act when it was placed on the prothonotary's docket: Hertzog *v.* Ellis, 3 *Binn.* 209. The consequence was, that there might be judgment and execution before the return day of the original process, and legal proceedings were carried on against a defendant in a suit in which he never was served with a writ, and in which he was not, and might never be, regularly bound to appear in court. By SERGEANT, J., in Jones *v.* Orum, 5 *Rawle* 255. See also Flanegan *v.* Negley, 3 *S. & R.* 498; Sharp *v.* Kilgore, *Id.* 387.

The legislative remedy for so incongruous a procedure, was the Act of 28th March 1820, which forbade the entry of a rule to arbitrate until the first day of the first term after suit brought, and until after a declaration or statement of the cause of action had been filed.

Hence sprang an evil in the opposite direction. An honest debt might be lost for want of a speedy remedy such as an award would afford. To delay a plaintiff through a long vacation, before he could proceed to obtain an award, was equivalent, in some cases, to a total denial of justice.

The revisors saw this, and the section of the Act of 16th June 1836, which they suggested and the legislature passed, restores to plaintiffs the right to enter rules of reference directly they institute their suits, retaining, however, the limitation that declarations or statements shall be first filed.

The practice, since 1836, has been to enter a rule of reference at any time after filing the declaration or statement, and, if before summons served, to have it served at the same time with the summons.

This is a good practice. It obviates the inconveniences which were caused by the Acts of 1810 and 1820; it gives plaintiffs a chance to speed justice; and it gives defendants an opportunity to know not only that they are sued, but for what they are sued, before they can be called on to choose arbitrators.

But now we have in the record before us an exceptional case—the service of a rule of reference four days before the summons was served on the defendant. We think that was an irregularity, which, if subsequent events had not cured it, would have been fatal to the proceeding. We hold the proper practice to be, under the Act of 1836, for the plaintiff to cause the summons to be served, before or at the time the rule of reference is served on the defendant. The service of a rule of reference on the 19th May, in a case in which the summons was not served till the 23d, is not a practice to be encouraged, nor in ordinary circumstances

[*Fehr v. Reich.*]

tolerated; but here the rule was for choosing arbitrators on the 4th of June—sixteen days after the service of the rule, and twelve days after service of the summons. They were chosen on the 4th June (the defendant not appearing) and notice was served on him of the meeting of the arbitrators on the 23d June. On that day, they met and made an award for the plaintiff. On the 14th July, a *fi. fa.* issued against him, and then for the first the defendant put himself in motion to resist the proceedings. The court granted a rule to vacate the judgment and set aside the award and execution, but finally discharged the rule, and left the record as the plaintiff had made it up.

Between the service of the summons and the choosing of arbitrators, there was as much time as the law allows for responding to summonses, and therefore the defendant's inactivity was unreasonable. True, the service of the rule on him before the summons was served was irregular, but in point of time it gave him all the notice he was entitled to receive of such a rule. After such notice of the rule and the writ, it became his duty, if he meant to avail himself of the irregularity, to apply to the court or to a judge at chambers, at an early hour, to arrest further proceedings, and save costs. This duty he neglected. He might have appealed from the award of arbitrators, but did not. He chose to lie by until an execution was in the hands of the officer, and then he appeared before a judge to do that which he should have done with promptness, if he expected relief. There is a time for all things. When a party has ample notice of an adversary proceeding, and he has nothing but a mere irregularity to allege against it, he is properly held to have waived that by such delay as was here.

The decree of the court is affirmed.